UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES D. MICKEY,

    Plaintiff,

v.

ZEIDLER TOOL & DIE COMPANY, ET AL.,

    Defendants.
_____/

Case No. 05-70340

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [17]**

This employment dispute comes before the Court on Defendants' motion for summary judgment. Plaintiff Charles D. Mickey's complaint alleges that Defendants reduced his salary and benefits and terminated him because of his age. Plaintiff further alleges that Defendants terminated him in retaliation for his filing an age discrimination complaint with the EEOC. For the reasons stated below, Defendants' motion for summary judgment is GRANTED.

**I.   Facts**

Plaintiff was employed by Defendant Zeidler Tool & Die Company ("Zeidler Tool") in various positions from 1971 through 2004, for a total of 33 years. (Pl.'s Dep. at 17.) Zeidler Tool is a small tool and die business located in Fraser, Michigan, that designs and builds dies for the automobile industry. Defendant Harold DeForge, a former employee of Zeidler Tool, bought the business in 1971 and is its current owner and President. (DeForge Dep. at 5-6.)

After purchasing Zeidler Tool, DeForge promoted Plaintiff to the positions of Die Leader, Foreman, and Shop Supervisor. This last position was his first as a salaried employee. In January 1992, DeForge made Plaintiff the General Manager. (DeForge Dep. at 13-15; Pl.'s Dep. at 19.) In that position, Plaintiff was to be responsible for overseeing the flow of work and employees in the shop. (DeForge Dep. at 17.) Another employee, Patrick Rhein, was promoted to Shop Supervisor. (Pl.'s Ex. 4, pay records; Rhein Aff. ¶ 2.) Plaintiff was the person who originally hired Rhein. (Pl.'s Dep. at 20.)

Beginning in 1996, DeForge felt that there was a decline in Plaintiff's work ethic and performance, and he spoke with Plaintiff about his concerns. (DeForge Dep. at 17, 19.) Plaintiff does not recall any such discussions. (Pl.'s Dep. at 26.)

DeForge reassigned Plaintiff's responsibility for day-to-day management of the shop to Patrick Rhein. DeForge testified that, being a small company, he "tried to be as loyal to my employees as possible. Mr. Mickey had been with us for some years; I did everything I felt I could do to keep Mr. Mickey and create an area, something for him. So as things were deteriorating on his job performance, we made a change. Mr. Rhein then took over the responsibilities that Mr. Mickey had." (DeForge Dep. at 19; Rhein Aff. ¶¶ 3-4.) DeForge attempted to find special projects for Plaintiff, while most of his duties and responsibilities were gradually turned over to DeForge and Rhein. (DeForge Dep. at 20-21.)

In 1996, DeForge was making $90,000 a year and Rhein was making $80,000. (Pl.'s Exs. 3 & 4, pay records.) In December 1997, DeForge reduced Plaintiff's salary from $90,000 to $75,000 per year. (Defs.' Ex. 3, pay records.) Plaintiff was told this was due to Zeidler Tool's financial condition. (Pl.'s Dep. at 29-30.) At the same time, Zeidler Tool

raised Rhein's salary from $80,000 to $100,000. (Pl.'s Ex. 4, pay records.) Rhein's salary was raised to $125,000 in January 2000. (*Id.*) At DeForge's instructions, Rhein did not report to Plaintiff since about 1996 or 1997. (Rhein Aff. ¶ 3.)

In 2001, Zeidler Tool began to lose money. Over a four-year period, its annual gross sales dropped from $4,717,000 to $2,900,000. (Defs.' Ex. E, excerpts from annual financial reports; Bielat Aff. ¶ 4.)

Numerous steps were taken in an attempt to cut costs and improve Zeidler Tool's financial health. Zeidler Tool's apprenticeship program was terminated, wages for shop employees were reduced or frozen, benefits were reduced or eliminated, and several employees were laid off. (DeForge Dep. at 23; Rhein Aff. ¶¶ 4-5.)

In March 2002, DeForge took a substantial reduction in his pay, reduced the salaries of other managers, and reduced the benefits for all employees. (DeForge Aff. ¶ 3.) Plaintiff's salary was reduced by $5,000 to $70,000 per year, and Rhein's salary was reduced by $25,000 to $100,000 per year. (Defs.' Exs. C and D, pay records of Mickey and Rhein.) Plaintiff was told the pay cut was due to Zeidler Tool's financial condition. (Pl.'s Dep. at 33.)

Zeidler Tool continued to lose money, with a loss of $102,925 in 2002 and $203,607 in 2003. (Defs.' Ex. E, excerpts from annual financial reports.)

During this time period, Plaintiff was essentially doing estimating work. This work was also performed by DeForge and Robert Bielat, a sales representative who had returned to

3

work at Zeidler as a part-time estimator after his retirement.[1]  (Rhein Aff. ¶ 6; Pl.'s Dep. at 33-38.)  Bielat reported to DeForge, not Plaintiff.  (Pl.'s Dep. at 34-35.)

In December 2003, DeForge was concerned that Zeidler Tool would go out of business if adjustments were not made, was contemplating making further reductions, and asked Plaintiff if he was planning to retire soon.  Plaintiff told him that he did not, and DeForge then told him that he would have to cut his wages; that this was the best he could do for him in light of Zeidler Tool's financial condition.  (DeForge Dep. at 21-22; Pl.'s Dep. at 38-40; DeForge Aff. ¶ 4.)

> Q.   Tell me what you remember about that conversation?
>
> A.   Mr. DeForge at that time asked me if I wanted to retire and I told him no, I didn't want to retire, and he at the time said the business wasn't doing very good and that I should think about retirement and I should get back with him and let him know how I felt about it.  So we left – at that point left the office.
>
> I went home and talked to my wife and I said, you know, we've got a situation where Mr. DeForge is trying to get me to direct myself on a retirement and I can't see where we can afford to retire.  So I wrote a list of items . . . regarding reasons why I could not retire at that time and these were the reasons why:  I had too many outgoing expenses to handle and no, I couldn't afford to retire.
>
> At that point Mr. DeForge had made up his mind that he was going to have to do something in the way of an adjustment and he specifically said this is what I'm going to do for you, and this is the best I can do.  He said, I'm going to give you $25 per hour, the same deal as I'm giving Mr. Bielat and you're going to work 40 hours a week, and your work time will be from 8:00 until 5:00 and I'll give you no more than 40 hours.
>
> At that point I said to him, 8:00 to 5:00 doesn't work very well as far as traffic is concerned, can I work from 7:30 to 4:30?  He said yes, and that was the end of the conversation.

---

[1] Mr. Bielat is five years older than Plaintiff.  (Bielat Aff. ¶ 1.)

(Pl.'s Dep. at 38-40.)

DeForge testifies that he told Plaintiff that, beginning in January 2004, he would be working as an hourly employee on a part-time basis, he could set his own hours but was not to exceed 40 hours per week, he would be paid $25.00 per hour, and, because he was no longer a salaried employee, his vacation and health benefits were being eliminated. (DeForge Dep. 25-26, 29.) Plaintiff asked if he could work 40 hours per week and DeForge "told him at the time, I will do it as long as I can." (DeForge Dep. at 26.) This was the same pay and benefit structure Zeidler Tool provided to Bielat, a part-time hourly estimator at Zeidler. (DeForge Dep. at 31-32; Bielat Aff. ¶ 4; DeForge Aff. ¶ 4.) It is also the same pay and benefit structure offered other part-time employees at Zeidler Tool. (Faifar Aff. ¶¶ 1, 3.)

DeForge also told Plaintiff that, in about six months or less, Zeidler Tool "would have to review this because the company was not doing well. . . ." (DeForge Dep. at 25.)

Although Zeidler Tool did not consider Plaintiff to be a full-time employee, Plaintiff elected to participate in the health insurance coverage made available to its full-time employees and paid 100% of those costs. (Pl.'s Ex. 8, Request to Admit Nos. 5-8.)

Plaintiff testifies that he does recall being told that he would no longer be a salaried employee, was to be an hourly employee paid $25/hour, that there would be no benefits and he would have to pay for his own Blue Cross/Blue Shield insurance coverage, and that he was getting the same deal as Mr. Bielat. Plaintiff does not recall being told that he could work less than 40 hours or that he was to be considered a part-time employee. (Pl.'s Dep. at 38-40.)

In January 2004, Zeidler Tool raised Rhein's yearly salary by $10,000 to $110,000. (Pl.'s Ex. 4, pay records.)  DeForge avers that he gave Rhein this pay increase because "he was entitled to it over the exceptional hard work he had put in over the previous two years."  (DeForge Aff. ¶ 4.)  The $10,000 salary increase was less than half of the pay-cut Rhein accepted in 2002.  (*Id.*)

On October 7, 2004, Plaintiff filed a Charge of Discrimination with the EEOC, alleging that Zeidler Tool discriminated against him because of his age in January 2004 when it: (1) reduced his salary from $70,000 to $52,000 per annum; (2) changed his status to a nonexempt employee[2] thus causing a loss in overtime hours, vacation time, sick time, bereavement pay, and other benefits; and (3) forced him to pay the entire cost for his health insurance coverage.  (Pl.'s Ex. 10, EEOC charge.)

On October 14, 2004, the EEOC mailed Zeidler Tool a Notice of Charge of Discrimination.  (Pl.s' Ex. 11, 10/14/04 Notice and Case Log.)

On Tuesday, October 19, 2004, DeForge notified Plaintiff in person that he was laid-off.  (DeForge Dep. at 33-34; Pl.'s Dep. at 44.)  DeForge made up his mind that previous weekend after reviewing quarterly financial reports and contemplating Zeidler Tool's financial status, the availability of estimating work and "special projects" for Plaintiff, and Plaintiff's job performance.  (DeForge Dep. at 34-38.)  At that time, Plaintiff was a few weeks away from his 64th birthday (born on 11/28/40).  (Pl.'s Ex. 10, EEOC compl.) DeForge admitted at his deposition that he had received the notice of Plaintiff's EEOC

---

[2]In January 2004, Plaintiff was changed from a salaried to an hourly employee.

6

charge before laying Plaintiff off on October 19, 2004.  (DeForge Dep. at 38.)  Plaintiff did not ask DeForge why he was being laid off.  (Pl.'s Dep. at 45.)

Patrick Rhein became General Manager when Plaintiff was laid off.  (DeForge Dep. at 20.)  Despite the change in title, Mr. Rhein avers that, during 2003 and 2004, he "did not assume any new duties or responsibilities."  (Rhein 3/24/06 Aff. ¶ 1.)  DeForge similarly avers that he did not reassign any of Plaintiff's duties to Patrick Rhein at any time in 2003 or 2004.  (DeForge Aff. ¶ 4.)

At the time he was laid off, Plaintiff testified that his primary function at Zeidler Tool was estimating.  (Pl.'s Dep at 33-34.)  Mr. Rhein avers that, during the last several years of his employment, Plaintiff "did not have any involvement in the management or operation of the shop or in [Zeidler]'s production work" and, to his knowledge, was doing only estimating work.  (Rhein Aff. ¶ 6.)  After Plaintiff was laid off, estimating responsibilities at Zeidler Tool were shared by Bielat (who is 5 years older than Plaintiff) and DeForge (also older than Plaintiff).  (Bielat Aff. ¶¶ 4, 5; Rhein Aff. ¶ 7.)

Zeidler Tool's financial statement for the nine months ending September 30, 2004, show a profit of $333,417, compared to the $404,380 loss for the same period in 2003.  (Pl.'s Ex. 17.)

Plaintiff subsequently filed a second EEOC charge alleging retaliation.

Plaintiff filed this complaint within 90 days after receipt of a right-to-sue letter.  His complaint alleges claims of age discrimination and retaliation against Zeidler Tool and DeForge, individually, and asserts violations under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 623(a)(1), 623(d), and under Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws §§ 37.2202, 37.2701(a).

## II.   Standard for Summary Judgment

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice.  Rather, there must be evidence on which the jury could reasonably find for the non-moving party.  *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III.  Analysis

#### A.  Age Discrimination Claims

Plaintiff brings his age discrimination claims under both the federal ADEA and Michigan's Elliott-Larsen Civil Rights Act, arguing that his pay and benefits were reduced and he was ultimately laid-off because of his age. Michigan courts look to federal law for guidance when reviewing claims of age discrimination based on state law. *Featherly v. Teledyne Industries, Inc.*, 486 N.W.2d 361, 364 (Mich. Ct. App. 1992). "A plaintiff seeking recovery under both acts must bear the burden of proving a prima facie case of discrimination." *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000).

Plaintiff can meet this burden either by presenting direct evidence that Zeidler Tool intentionally discriminated against him because of his age or by presenting circumstantial evidence, following the *McDonnell Douglas* burden-shifting analysis. *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 547 (6th Cir. 2004). "Circumstantial evidence . . . is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). Because Plaintiff is attempting to establish his age discrimination claims with circumstantial evidence, the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), is applied. *Rowan*, 360 F.3d at 547.

The *McDonnell Douglas* burden-shifting framework consists of three stages. The plaintiff must "first establish a prima facie case of age discrimination." *Rowan*, 360 F.3d at 547. Once that is done, the burden shifts to the defendant, "who must give legitimate, non-discriminatory reasons for the adverse employment decision." *Id.* After the defendant

satisfies this burden of production, the plaintiff must "establish that the legitimate reasons offered by [the defendant] were just a pretext for decisions actually motivated by an unlawful bias against age." *Id.*

### 1. Plaintiff's Prima Facie case

The plaintiff establishes a prima facie case of age discrimination by showing that: (1) he is a member of a protected age class (i.e., older than 40); (2) he suffered an adverse employment action; (3) he was qualified for the position he held; and (4) he was replaced by a significantly younger person. *Grosjean v. First Energy Corp*, 349 F.3d 332, 335 (6th Cir. 2003). "In some cases, plaintiff's evidence establishing the prima facie case can also be sufficient to meet one or more of the elements necessary to rebut the defendant's proffered non-discriminatory reasons." *Id.*

The parties do not dispute Plaintiff's ability to satisfy the first three elements. They do, however, dispute whether Plaintiff has presented evidence establishing the fourth element. Plaintiff argues here that he was replaced by a significantly younger worker, Patrick Rhein (age 43 in October 2004) because Rhein was named General Manager after Plaintiff was laid off. Defendants, on the other hand, present evidence that despite the new title, Rhein did not take over the estimating work that Plaintiff primarily performed in 2004. (Pl.'s Dep. at 33-34.) Rather, that work was redistributed between DeForge and Bielat, both of whom are older than Plaintiff. (Bielat Aff. ¶ 5.) Defendants further argue that, although Rhein may have added some of Plaintiff's duties to his existing duties, this does not mean that he "replaced" Plaintiff. This Court agrees with Defendants.

As both the Sixth Circuit and the Michigan Supreme Court have observed, "a person is not replaced when another employee is assigned to perform the plaintiff's duties in

addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform plaintiff's duties." *Lytle v. Malady*, 579 N.W.2d 906, 917 n. 27 (Mich. 1998) (citing *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)). Plaintiff has not presented evidence showing that he was "replaced" by a younger worker; i.e., that Rhein was "reassigned" to perform Plaintiff's duties. It is not disputed that, after being named General Manager when Plaintiff was let go, Rhein did not perform Plaintiff's primary duty of estimating. That work was subsequently redistributed to DeForge and Bielat. That Rhein may have been assigned to perform some of Plaintiff's other duties in addition to his own likewise does not mean that Rhein "replaced" Plaintiff. *See Lytle* and *Barnes*.

Plaintiff further argues that he was treated less favorably in the terms and conditions of his employment; i.e., reductions in pay and elimination of benefits. He fails, however, to present evidence that similarly situated employees outside the protected class or those significantly younger were treated more favorably. "In determining whether an allegedly comparable employee is similarly situated to the plaintiff, the question is whether all of the *relevant* aspects of his employment situation were nearly identical to those of the [plaintiff]'s employment situation." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 929 (6th Cir. 1999) (internal quote and citation omitted). As to Plaintiff's claims that Rhein received more favorable treatment, Plaintiff has not presented evidence from which a reasonable juror could conclude that Rhein was similarly-situated to Plaintiff in all relevant aspects of their jobs during the challenged time period. As to Plaintiff's claims that other "full-time" hourly employees received more favorable treatment (health benefits),

Plaintiff likewise fails to present evidence that these employees were similarly situated to Plaintiff in all relevant aspects of their jobs during the challenged time period. Plaintiff thus fails to establish the fourth element of his prima facie case.

### 2. Legitimate Non-discriminatory Business Reasons and Pretext

Even if Plaintiff were found to have satisfied the fourth prong of his *prima facie* case, he has not come forward with admissible evidence that would allow a reasonable jury to conclude that Zeidler's legitimate, non-discriminatory business reasons for selecting Plaintiff for lay-off were merely a pretext for intentional age discrimination. Plaintiff attempts to show pretext with circumstantial evidence that age bias rather than concern over its financial condition actually motivated Defendants' challenged actions.

Plaintiff's employer presents evidence that this layoff was required for financial reasons, that it needed to continue reducing costs in order to improve its financial situation. That Zeidler Tool saw a profit for the first nine-month period in 2004 does not allow a reasonable jury to infer that its proffered business reason for the layoff was false. Mr. DeForge testified that he made the decision to layoff Plaintiff because Zeidler Tool was still struggling, the estimating services Plaintiff performed could be redistributed to DeForge and Bielat, who were already doing estimating along with Plaintiff, and thus costs could be substantially reduced. Plaintiff cannot prove pretext by simply second-guessing Defendants' proffered business reasons for its challenged actions. To prove pretext and intentional age discrimination, Plaintiff "must directly confront the asserted justification for

the discharge." *Rowan*, 360 F.3d at 550.  Plaintiff "may not simply substitute [his] own business judgment for that of the defendant.  Rather, to survive a summary judgment motion [he] must show that a reasonable jury could conclude that the actual reasons offered by the defendant were a mere pretext for unlawful age-discrimination, not that other reasonable decision-makers might have retained [Plaintiff]."  *Id.*  Accord, *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 527 (Mich. 2001).  Plaintiff has not met that burden here.

To show pretext, Plaintiff also presents evidence that DeForge asked Plaintiff about his plans for retirement and had "generated the idea" that two other older employees, Robert Bielat and Mahai Faifar, should retire or do something else.  (Pl.'s Dep. at 32, 37-341.)  Plaintiff proves nothing by showing that DeForge asked him about retirement.  "Both federal and Michigan courts have held that questions about retirement plans are not evidence of age discrimination."  *Scuderi v. Monumental Life Ins. Co.*, 344 F. Supp.2d 584, 600 (E.D. Mich. 2004).  "'[A] company has a legitimate interest in learning its employees' plans for the future, and it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct.'"  *Id.* (quoting *Colosi v. Electri-Flex Co.*, 965 F.2d 500, 502 (7th Cir. 1992)).  Plaintiff recalls DeForge asking him on two occasions about his plans to retire, both occurring in the 2001-2003 time period Zeidler was posting year-end losses.  Contrary to assertions in his Response, Plaintiff never testified that DeForge mandated that he retire or gave him an ultimatum to retire "or else."  Rather, Plaintiff testified that DeForge told him that the business was not doing that well and asked him if he wanted to retire.  When Plaintiff told DeForge that he could not afford to retire, DeForge kept him on as an hourly employee earning $25/hour without benefits.  (Pl.'s Dep. at 38-40.)  He told Plaintiff that he was giving him the same deal he gave Bielat.  (*Id.*)

Plaintiff's testimony that DeForge "generated the idea" that two other older employees (Messrs. Bielat and Faifar) should retire is likewise insufficient to show pretext. The first employee, Mr. Bielat, avers that, as he approached age 65, DeForge asked him what his retirement plans were, and, when he responded that he wanted to continue working, DeForge let him work four days a week. (Bielat Aff. ¶ 3.) In 2003, when Zeidler Tool was having financial difficulties, DeForge asked Bielat to go to three days a week. He continued on that schedule for 2003 and 2004, was paid on an hourly basis, and paid for his own health insurance coverage through Zeidler Tool. (Bielat Aff. ¶ 4.) Mr. Bielat avers that, while DeForge did ask him his plans for retirement as he neared age 65, he never asked nor told him to retire. (*Id.* at ¶ 6.)

The second Zeidler Tool employee, Mr. Faifar, avers that, after choosing to retire, he contacted DeForge and asked if he could return to work on a part-time basis. Mr. DeForge agreed, and he is currently being paid as an hourly employee and does not receive benefits. (Faifar Aff. ¶ 3.) Mr. Faifar avers that DeForge never told him or asked him to retire. (*Id.* at ¶ 4.)

Accordingly, even if Plaintiff had established a prima facie case of age discrimination under either the ADEA or Michigan's ELCRA, he has not come forward with evidence that would allow a reasonable juror to find that the legitimate non-discriminatory business reasons Zeidler Tool asserted for its challenged actions were a pretext for intentional age discrimination.

### B. Retaliation Claims

Plaintiff also alleges claims of retaliation in violation of the ADEA , 29 U.S.C. § 623(d), and Michigan's ELCRA, Mich. Comp. Laws § 37.2701(a). The burden-shifting *McDonnell-*

*Douglas* analysis also applies to claims of retaliation. *See Balmer v. HCA, Inc.*, 423 F.3d 606, 613-14 (6th Cir. 2005); *McLemore v. Detroit Receiving Hosp.*, 493 N.W.2d 441, 444-45 (Mich. Ct. App. 1993).

### 1. Prima Facie Case

"To establish a prima facie case of retaliation, a plaintiff must show: (1) that [he] engaged in protected activity; (2) that defendant knew of this exercise of [his] protected rights; (3) that defendant consequently took an employment action adverse to plaintiff; and (4) that there was a causal connection between the protected activity and adverse employment action." *Balmer*, 423 F.3d at 614. *Accord Barrett v. Kirtland Community College*, 628 N.W.2d 63, 70 (Mich. Ct. App. 2001).

It is undisputed that Plaintiff filed an EEOC charge against Zeidler Tool for age discrimination, and DeForge knew this before he laid him off on October 19, 2004. Thus, there is no challenge to Plaintiff's ability to establish the first three elements of his prima facie case of retaliation. There is a challenge, however, to the Plaintiff's ability to establish the fourth -- causal link -- element of his prima facie case for retaliation. Accordingly, the Court examines that issue.

The Michigan courts have observed that "a temporal relationship, standing alone, does not demonstrate a causal connection between the protected activity and any adverse employment action. Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed." *West v. General Motors Corp.*, 665 N.W.2d 468, 472-73 (Mich. 2003). "Plaintiff must show something more than merely a coincidence in time between the protected activity and adverse employment action." *West*, 665 N.W.2d

at 473. The Sixth Circuit has similarly observed that "'the mere fact that an adverse employment action occurs after a charge of discrimination is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation to the discrimination claim." *Balmer*, 423 F.3d at 615 (quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1314 (6th Cir. 1989)). Rather, the requisite causal link is established by "showing that the employer would not have taken the adverse action 'but for' the employee's protected activity." *Smith v. ACO, Inc.*, 368 F. Supp.2d 721, 732 (E.D. Mich. 2005) (citing *Allen v. Dep't of Corrections*, 165 F.3d 405, 413 (6th Cir. 1999)).

Plaintiff proffers the following to establish the necessary causal link: (1) evidence of the short interval of time between his filing an EEOC charge and Defendants' decision to lay him off; and (2) evidence that Zeidler Tool was showing a profit for the first nine months of 2004 after several years of losses. Defendants respond with the following evidence. Zeidler Tool lost money in 2001, 2002, and 2003. To reduce costs, DeForge took a significant reduction in his pay, reduced the pay of other managers, and reduced the benefits for all employees. Prior to Plaintiff being laid-off, Plaintiff was primarily performing estimating duties for Zeidler Tool, and DeForge and Bielat also performed those services. (Pl.'s Dep. at 33-38; Rhein Aff. ¶ 6; Bielat Aff. ¶ 5.) As to DeForge's decision to layoff Plaintiff, that decision was made the weekend before October 19, 2004. It was based on his review of Zeidler Tool's financial reports for 2001-2004, and the determination that the company was still struggling. DeForge also considered the availability of work for Plaintiff. (DeForge Aff. ¶¶ 2-4; DeForge Dep. at 21-23, 32-40, 46.)

Contrary to Plaintiff's retaliation arguments, evidence that Zeidler Tool was showing a profit for the first nine months of 2004 does not render false DeForge's testimony that the

company was still struggling to recover from losses in the previous three years. This leaves Plaintiff with only the evidence showing a close proximity in time between his engaging in protected activity, DeForge's knowledge of that fact, and DeForge's decision to lay him off. Absent this coincidence in time, there is no evidence to infer that Defendants' legitimate, non-discriminatory business reasons were a mere pretext for an intent to retaliate against Plaintiff. There is no evidence that DeForge expressed either to Plaintiff or to anyone else his displeasure with Plaintiff because he engaged in protected activity. Accordingly, this Court concludes that temporal proximity, standing alone, is not enough to allow a reasonable juror to conclude that Defendants would not have laid off Plaintiff "but for" his filing the EEOC charge. This conclusion finds support in both Michigan and Sixth Circuit precedent. *See West*, 665 N.W.2d at 473; *Balmer*, 423 F.3d at 615.

### 2. Legitimate, Non-Discriminatory Reasons and Pretext

Even if Plaintiff were able to establish the requisite causal link, his retaliation claim would fail. As discussed above, Defendants have come forward with legitimate, non-discriminatory reasons for laying off Plaintiff, and Plaintiff has not come forward with evidence showing that Defendants' proffered reasons were a pretext.[3]

### IV. Conclusion

For the above-stated reasons, Defendants' motion for summary judgment is GRANTED.

---

[3] For the above-stated reasons, Plaintiff's claims against DeForge individually likewise fail.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: June 12, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 12, 2006, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager